THE STATE *ex rel.* CRITTENDEN, *Governor,* v. WALKER, *State Auditor.*

**Absence of Governor:** RIGHT OF LIEUTENANT-GOVERNOR TO ACT. Temporary absence of the Governor from the State, in the discharge of duties imposed upon him by law, does not of itself authorize the Lieutenant-Governor to assume the functions and receive the salary of the Governor's office during his absence. See *People v. Parker,* 3 Neb. 409; *s. c.,* 19 Am. Rep. 634.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*L. C. Krauthoff* for relator.

*D. H. McIntyre,* Attorney General, for respondent.

NORTON, J.—This is a proceeding by mandamus to compel the State Auditor to audit the account of relator and draw a warrant for the salary of relator as Governor of the State for the month of May, 1882. The respondent, by leave of court, waived the issue of an alternative writ and filed a demurrer to the petition treating it as the alternative writ.

The effect of the demurrer is to admit the facts averred in the petition, but to deny their sufficiency to entitle relator to the relief prayed for. The facts admitted are substantially as follows, viz: That relator was absent from the State in the city of New York, from the 17th to the 27th of May, 1882; that relator was in said city, during said time, for the purpose of performing a duty imposed upon him by the constitution and laws of the State, namely, to inspect and examine certain securities deposited in the National Bank of Commerce of New York City, which bank had been duly selected as a depository of the bonds required to be deposited for the safe keeping of the public moneys of the State; and also in the performance of duties arising out of a certain action pending between Ralston and others and the said relator and other officers of the

State, involving large and important interests to said State; that during the said absence of relator, Robert A. Campbell, lieutenant-governor, appeared at the executive office on the 25th day of May, 1882, and assumed the discharge of the duties of the office of governor, and continued in the discharge thereof until the 27th day of May, 1882, when relator returned to Jefferson City; that respondent refused to draw a warrant for the salary of relator for the period during which the said lieutenant-governor assumed the discharge of the duties of the said office.

The question presented, therefore, is, Can the governor who absents himself from the State for the purpose of performing duties imposed upon him by the constitution and laws of the State, be deprived of his salary during such absence. The attorney general, in an argument characterized for its plausibility and ingenuity, insists that he can, and basis his argument on the following section of the constitution: "In case of the death, conviction or impeachment, failure to qualify, resignation, absence from the State, or other disability of the governor, the powers, duties and emoluments of the office for the residue of the term, or until the disability shall be removed, shall devolve upon the lieutenant-governor." It is insisted that by virtue of this section, in case of the absence of the governor from the State for any purpose or for any period of time, however short, that *pro tempore* he ceases to be governor, and all executive functions, as well as the emoluments of the office, devolve upon the lieutenant-governor.

We are of the opinion that the construction contended for is too narrow, is not warranted by the section. Treating conviction or impeachment either as meaning conviction on impeachment, conviction of any crime as well as impeachment, it will be perceived that there are five specified causes, upon the happening of any one of which, the duties and powers, as well as the salary of governor, devolve upon the lieutenant-governor. It will be observed that four of these causes, viz., death, conviction on impeachment, failure

to qualify and resignation, are of such a nature as absolutely to create a vacancy in the office; and all of the four are of such a character that no one of them can occur without its being a matter of such public notoriety as to be known throughout the State in twenty-four hours after the death, impeachment, failure to qualify or resignation occurs, thus not leaving in doubt or to conjecture the right of the lieutenant-governor to assume at once the performance of the duties and powers of the gubernatorial office and to receive the emoluments thereof.

In view of the fact that the death, impeachment, failure to qualify or resignation of the governor involves nec essarily a vacancy in the office, and the further fact that whenever any one of the above events occurs, the right of the lieutenant-governor is not left open to question or doubt, it may well be insisted upon, as it is, by relator, that the fifth specified cause, viz., "absence from the State," does not mean either an absence from the State for the purpose of performing a duty imposed by law upon the governor, or a mere casual absence of a few days, but that it is necessarily implied from its connection with the other specified causes, that such absence must be of such a character as to indicate on the part of the governor, an abdication for the time being of the duties of the office, and such as, in the opinion of the governor, would make it necessary for him to call upon the lieutenant-governor to take his place and perform such duties as the condition of business in his office and the exigencies likely to arise might require during such absence, and when so called upon his authority to act could neither be questioned nor his right to the emoluments of the office denied until the governor returned and resumed his place.

Speaking for myself, and using the language of Ludeling, C. J., in the case of the *State ex rel. Warmoth v. Graham*, 26 La. Ann. 568; *s. c.*, 21 Am. Rep. 551, when a like question was under consideration, I do not believe "that it was ever contemplated that the movements of the governor

should be watched with a view that the lieutenant-governor * * should slip into his seat the moment he stepped across the borders of the state."

It is neither provided by the constitution nor by any law of the State, how the absence of the governor from the State shall be ascertained or made known either to the people or to the lieutenant-governor, so as to authorize him to assume the functions of the executive office or to impart knowledge of the fact to the people of his authority so that it may be recognized and unquestioned.

In the event of the death, impeachment, failure to qualify or resignation of the governor, no such difficulty presents itself. If the lieutenant-governor or auditor may assume to determine that any absence of the governor from the State, without reference to the purpose of the absence, or the character and extent of it, is such an absence as, for the time being, ousts him of his office, and casts upon the lieutenant-governor the powers, duties and emoluments of the office, why might they not, in passing upon the meaning of the words occurring in said section " or other disability of the governor," determine that he was disabled by reason of insanity without waiting for the judgment of the court pronouncing him insane, in a proceeding to determine that question, by inquest of lunacy.

The only authority we have found upon the question is the case of the *State ex rel. Warmoth v. Graham*, 26 La. Ann. 568, which was a proceeding by mandamus to compel the auditor to pay the warrant of the governor for his salary from the 6th to the 19th of May, 1871, and from the 26th of June to the 17th of July, 1871. The auditor refused to pay this warrant on the ground and for the reason that during said periods the governor was absent from the state, and that the duties of governor, as well as his salary, devolved upon the lieutenant-governor, to whom the salary had been paid.

Under the constitution and laws of Louisiana it is provided, as it is in our constitution, that in the absence of the

governor from the state, or his inability to discharge the duties of the office, the powers and duties as well as the salary of the office, devolve upon the lieutenant-governor. It was held in that case that it was the duty of the auditor to pay the warrant, and as it is the only case in point we have been able to find, it is deemed not inappropriate to quote what was said by the court in the disposition of the question, which is as follows:

" It is evident if the lieutenant-governor be authorized to assume the functions of the governor, during any temporary absence of the governor from the state, he may also, whenever the governor is unable to attend to the duties of his office on account of sickness, in case of 'inability to discharge the powers and duties of the office.' We do not believe this to be the meaning intended by the framers of the constitution. The inability to discharge the duties of the office, as well as the absence from the state spoken of in the article, are such as would affect injuriously the public interest. The mere absence at Pass Christian, within a few hours run of the capital, could not, by any possibility affect the public interest. How is the absence of the governor to be ascertained? It is manifest that there ought to be some certain proof accessible to the public from which they may with certainty derive the knowledge as to who is authorized to act as governor of the state. As the law makes no provision for the mode in which the governor shall manifest to the public his absence from the state, it necessarily is left to his discretion, subject to his responsibility to the people. If the interests of the state should suffer in consequence of his prolonged absence, he would be amenable to public sentiment, and to the control of the impeaching power of the state. Some public record should be made of the intended absence, or the governor should publicly place the lieutenant-governor in charge of the government, so that the term of absence shall appear of record, and during such absence the acts of the acting gov-

ernor would be of unquestionable validity.   Anything less than this might create confusion and uncertainty."

The only difference between the above case and the one before us is, that it does not appear that the governor of Louisiana was absent from the state in the discharge of a duty imposed upon him by law, while in the case under consideration the governor was absent for the purpose of performing a duty which the law enjoined upon him in conjunction with others.   And while the facts in the present case do not call upon us to go as far as the court went in said case, it may not be improper to say that the views therein expressed are not inconsistent with sound reason, and if an enlightened court under a constitution and laws, which, like our constitution, devolve the duties of the office of governor upon the lieutenant-governor in the event of the absence of the governor from the state, has determined, as it did in the case above cited, that the absence of the governor from the state for a limited time creates no such vacancy in the office as to authorize the lieutenant-governor to assume the duties and prerogatives, and receive the salary of the governor, it is at the very least persuasive authority for the soundness of the conclusion we have reached that the absence of the governor from the state, for the purpose of performing a duty cast upon him by law, did not authorize the lieutenant-governor to assume the functions of his office during such absence and receive his salary.

The demurrer of respondent is overruled and a peremptory writ awarded, in which all the judges concur, except SHERWOOD, J., who declines to sit.