CARLSON, Presiding Justice,
specially concurring:
¶ 61. While I wholeheartedly concur with the majority opinion, I am compelled to write in response to the separate opinions in this case. Let me first state that there is a division on this Court in this case because there is a disagreement as to the identification of the critical issue confronting this Court today. In my opinion, Presiding Justice Dickinson succinctly states the issue before us in paragraph four of his majority opinion: “[T]he controlling issue is not whether Section 124 requires applicants for pardons to publish notice — it clearly does. The controlling issue is whether the judicial branch of government has constitutional authority to void a facially-valid pardon issued by the coequal executive branch, where the only challenge is compliance with Section 124’s publication requirement.”
*415 ¶ 62. Also, to emphasize the strength of the authority cited by the majority to un-dergird its position in today’s case, I wish to point out the justices’ votes in those cases cited by the majority. These cases are in accord with this Court’s majority decision today. These cases (and the justices’ votes) are as follows (listed in chronological order): Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803) (all justices); Ex Parte Wren, 63 Miss. 512, 56 Am. Rep. 825 (1886) (all justices); Hunt v. Wright, 70 Miss. 298, 11 So. 608 (1892) (all justices); In re Moore, 4 Wyo. 98, 31 P. 980 (1893) (all justices); Lang v. Bd. of Supervisors, 114 Miss. 341, 75 So. 126 (1917) (all justices); Montgomery v. Cleveland, 134 Miss. 132, 98 So. 111 (1923) (all justices); State v. McPhail, 182 Miss. 360, 180 So. 387 (1938) (all justices); Pope v. Wiggins, 220 Miss. 1, 69 So.2d 913 (1954) (all justices); Nixon v. U.S., 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) (all justices except Justices White and Blackmon); Tuck v. Blackmon, 798 So.2d 402 (Miss.2001) (all voting justices except Presiding Justice Banks and Justice Diaz).
¶ 63. Turning now to some of the separate opinions, Chief Justice Waller, in his dissent, states, at least inferentially, that the governor has no right to interpret our state constitution. Justice Randolph, in no uncertain terms, states that the governor is without authority to interpret our state Constitution.
¶ 64. With the utmost respect for my colleagues in the minority, Chief Justice Waller and Justice Randolph are inconsistent in their application of the tenet that the governor has no authority to interpret the Constitution. They both have seized upon the attorney general’s examples given at oral arguments, and his post-argument Rule 28(j) supplementation (see M.R.A.P 28(j)) to point out how former Governor John Bell Williams and former Governor William L. Waller “interpreted” Section 124 of the Constitution by requiring compliance with the publications provisions contained therein.[66] This instance involved the pardoning of Randall Kelly Davis by Governor Williams for one of Davis’s crimes, and then Governor Waller’s pardoning of Davis on another crime due to the inability of Governor Williams to pardon Davis on the second crime because of Governor Williams’s belief that Davis had not complied with the publication provisions of Section 124. Frankly, I am at a loss as to how Governor Williams’s actions and Governor Waller’s actions concerning the Davis pardons did not involve two governors’ “interpretation” of Article 5, Section 124 of our state Constitution.
¶ 65. Additionally, Chief Justice Waller refers to former Governor Ray Mabus’s actions in the pardoning of a convicted burglar by including on the face of the pardon that the pardonee had published his petition for a pardon as required by the provisions of Section 124 of the state Constitution. Did not Governor Mabus “interpret” Section 124 to require publication as a prerequisite to the granting of a pardon?
¶ 66. And yet, despite the inferred chastisement of former Governor Barbour for having the audacity to offer his “interpretation” of Section 124 in determining *416 the requirements (or lack thereof) necessary to grant pardons, the writers in the minority have relied on former governors’ “interpretation” of Section 124 to under-gird their position that Governor Barbour’s actions were inconsistent with the publication provisions of Section 124. Respectfully, it would appear to me that certain members of this Court have taken the position that, since Governor Barbour’s “interpretation” of Section 124 as to the conditions necessary for granting pardons is different from those of Governors Williams, Waller, and Mabus, Governor Barbour is wrong.
¶ 67. If, in reaching our decision in today’s case, we are going to take this approach as to taking judicial notice of the actions of former governors in what they required as prerequisites to granting pardons, then I propose that we take judicial notice of what is occurring across the street at the Capitol during the current legislative session concerning legislative action which obviously is in response to the hue and cry brought about by Governor Barbour’s last-minute pardons as he left office. I propose that we take judicial notice of the existence of House Bill 36, currently under consideration in the Mississippi House of Representatives. The Title of HB 36 explains:
AN ACT TO PROVIDE THAT WHEN A PERSON CONVICTED OF A FELONY CRIME PETITIONS THE GOVERNOR FOR A PARDON, SUCH PERSON SHALL CONTACT THE DISTRICT ATTORNEY AND SHERIFF OF THE COUNTY IN WHICH THE FELONY WAS COMMITTED TO SCHEDULE A PUBLIC HEARING REGARDING THE POSSIBLE GRANTING OF THE PARDON; TO REQUIRE NOTICE OF THE PUBLIC HEARING TO BE PUBLISHED IN A NEWSPAPER AND THAT SUCH NOTICE BE PAID BY THE PERSON SEEKING THE PARDON; AND FOR RELATED PURPOSES.[67]
This action by certain legislators would certainly indicate concern over the clarity, or lack of clarity, of the provisions of Section 124, and that the enactment of statutes, and perhaps amendments to the Constitution, are required to prevent what evidently is perceived as a travesty of justice in Governor Barbour’s pardoning of individuals without meeting the publication requirements. Could we not take judicial notice of these legislative actions (as some members of this Court have done concerning the actions of former governors) in order to lend guidance to this Court to conclude that Governor Barbour’s actions were not inconsistent with the current provisions of Section 124 of the state Constitution?
¶ 68. In the end, we must do as Presiding Justice Dickinson has done in his majority and calmly and unemotionally consider the language of Section 124, as written, and interpret the plain language of Section 124, without consideration of how such language may have been interpreted and applied by former Governors Williams, Waller, Mabus, or Barbour, or any other governor or governmental official in the executive branch. Nor should we consider what actions the Legislature may be taking in the 2012 Session in response to Governor Barbour’s issuance of the pardons in question. But I do agree with my colleagues in the minority that, in the end, it is this Court, and not the executive or legislative branches, which ultimately interprets the provisions of our *417 state Constitution. I rely on their citation of authority to support this proposition. Thus, I could not agree more with Justice Randolph when he states that “[t]he beauty of the Constitution is that, if application of its words causes unintended results, the Constitution provides a remedy: amend it.”
¶ 69. I am satisfied that my esteemed colleague, Justice Randolph, is not implying that the justices of this Court who disagree with his position are violating our solemn constitutional oaths. In fact, I agree with Justice Randolph when he states that “[rjegardless of the result, this Court must enforce the articles of the Constitution as written.” (citing Pro-Choice Mississippi v. Fordice, 716 So.2d 645, 652 (Miss.1998)). (Emphasis in original).
¶ 70. I am firmly convinced that Presiding Justice Dickinson, and those who have joined his majority opinion, have strictly complied with these basic tenets. If our state Constitution in general, and Section 124 in particular, as currently written, has produced unintended results, the people may amend it.
¶ 71. With this being said, I fully join Presiding Justice Dickinson’s majority opinion.
DICKINSON, P.J., LAMAR AND CHANDLER, JJ., JOIN THIS OPINION.

. Justice Randolph adopts by reference Chief Justice Waller's position on the procedures followed by prior governors in granting pardons. While Chief Justice Waller does not use the word "interpret” in discussing the application of Section 124 by Governor Williams and Governor Waller in the pardon case discussed, it is obvious that, in determining whether to grant the pardon at issue, both governors had to lend their "interpretation” to the language of Section 124. In other words, they had to apply the provisions of Section 124 as they understood them.

. See http://billstatus.ls.state.ms.us/2012/pdf/ history/HB/HB0036.xml (last visited Mar. 2, 2012).