STATE ex rel. John D. ASHCROFT, Governor, Relator,

v.

Roy D. BLUNT, Secretary of State, Respondent,

Mel Carnahan, Lieutenant Governor, Intervenor.

James L. MATHEWSON, President Pro Tem of the Missouri Senate, et al., Appellants,

v.

John D. ASHCROFT, Governor, et al., Respondents.

Nos. 72494, 73339.

Supreme Court of Missouri, En Banc.

July 23, 1991.

which were much more eloquent and understanding than this movant's.

William L. Webster, Atty. Gen., James B. Deutsch, Asst. Atty. Gen., Kevin L. King, Asst. Atty. Gen., Jefferson City, for relator.

William Newcomb, Jefferson City, for respondents.

Alex Bartlett, Marshall Wilson, Jefferson City, for amicus Lt. Governor.

Cary Hammond, Greg A. Campbell, Richard P. Perkins, St. Louis, for President Pro. Tem. and Speaker.

PER CURIAM:

John D. Ashcroft, Governor of Missouri, petitioned for writ of mandamus, seeking an order directing Roy D. Blunt, Secretary of State, to accept, authenticate and attest various warrants, appointments, commissions, proclamations and other documents submitted to him by the Governor while

absent from the state on February 26, 1990. The resolution of this cause requires construction of Missouri Constitution Article IV, Section 11(a), which in pertinent part provides: "On the failure to qualify, absence from the state or other disability of the governor, the powers, duties and emoluments of the governor shall devolve upon the lieutenant governor for the remainder of the term or until the disability is removed." Our alternative writ of mandamus is made absolute.

From Monday, February 12, 1990, through Tuesday, February 27, 1990, Governor Ashcroft was not present within the state, having travelled first to Japan to encourage international trade, thence to Washington, D.C., to attend the National Governor's Association Conference, meet with federal officials regarding the Head Start program and deliver a grant application to the United States Department of Health and Human Services. Before leaving February 12, Governor Ashcroft informed Lieutenant Governor Carnahan and Secretary of State Blunt by letter that he would be out of the state during that time. However, on February 26, a letter bearing the facsimile signature of Governor Ashcroft was sent from his office to the Lieutenant Governor, cancelling the earlier letter. From February 12 until midnight February 25, the Lieutenant Governor was paid a salary equal to that of the Governor from a budgetary appropriation made to the Governor's office for that purpose, but Governor Ashcroft terminated this special salary arrangement effective midnight February 25.

On February 26, 1990, the Governor, still in Washington, executed and "faxed"[1] to his Director of Governmental Operations and Legislation a letter directing that his facsimile signature be affixed to various documents, including eleven appointments, two proclamations, two commissions, one appointment as special commissioner or referee and one extradition order. As instructed by the "fax" letter and telephone conversation with the Governor, the director delivered these documents to Secretary Blunt for his authentication and attestation, but the Secretary informed the director by letter of February 26 that he refused to so authenticate and attest the documents. On February 27, the Governor applied here for leave to file a petition for writ of mandamus, accompanied by the proposed petition, and on March 22, the Court ordered the petition filed and that an Alternative Writ of Mandamus issue.

When Governor Ashcroft left the state April 21, 1990, to address the Republican National Committee, the Lieutenant Governor signed documents otherwise identical to those previously signed by the Governor and on April 23 sent them to the Secretary of State, who again refused to authenticate and attest, returning the documents to the Lieutenant Governor. The Lieutenant Governor on April 25 was granted leave to intervene in the mandamus action, as were Senate President Pro Tempore James L. Mathewson and Speaker of the House Bob F. Griffin on April 26. On the latter date, Mathewson and Griffin filed a declaratory judgment action in the Circuit Court of Cole County, naming as defendants the Governor, Lieutenant Governor, Secretary of State, State Auditor Margaret Kelly, State Treasurer Wendell Bailey, and Attorney General William Webster, seeking a declaration of rights with respect to the term "absence from the state" as employed in Missouri Constitution, Article IV, Section 11(a).[2] Plaintiffs urged that upon the physical absence of the Governor from the state, his powers, duties and emoluments devolve upon the Lieutenant Governor or other constitutionally designated successors. They further asked the court to declare what actions, if any, the Governor may perform outside the state; what salary level the Lieutenant Governor should be paid at times when the Governor might be absent from the state; the obligation of the Governor to notify the Lieutenant Governor or next official in the constitutional line of succession then present in the state of the time the Governor is to be physically

---

1. The term "fax" is the common name for the "wire facsimile transmission" in general use world-wide for transmission of documents.

2. The Lieutenant Governor was later realigned as a plaintiff in that proceeding.

outside the state; when the Lieutenant Governor ceases to be able to act as President of the Senate while serving as acting Governor and when Mathewson as President Pro Tempore of the Senate is authorized to exercise the powers of President of the Senate; the illegality of the actions of Governor Ashcroft in filing the seventeen documents executed by him as Governor while not in the state and to confirm the correctness of the Secretary of State's refusal to attest and authenticate the documents; the legality of the actions of Lieutenant Governor Carnahan in filing the seventeen documents with the Secretary of State and to require the Secretary to attest and authenticate the documents; and to declare the legal effect upon legislation signed by Carnahan on May 10, 1990, as President of the Senate, while Governor Ashcroft was physically beyond the borders of the state.

The parties note that on other occasions subsequent to February 27, 1990, Governor Ashcroft has been physically absent from Missouri. While out of the state in May 1990, he did not notify the Lieutenant Governor of this absence, and for all periods of time since February 26, 1990, Lieutenant Governor Carnahan has been paid at the salary level of Lieutenant Governor.

On May 15, 1990, this Court consolidated the mandamus and declaratory judgment actions, appointing the Honorable Byron Kinder as Master to report the mandamus action with recommended findings of fact and conclusions of law following disposition of the declaratory judgment action. In essence, the Master found that the Governor's temporary absence from the geographical boundaries of the state, for any reason, does not alter his power, authority or status. By and large we find ourselves in agreement with the Master's findings and conclusions, all to be discussed more fully below.

This case turns upon the construction of the phrase "absence from the state or other disability of the governor" appearing in Missouri Constitution, Article IV, Section 11(a):

On the death, conviction or impeachment, or resignation of the governor, the lieutenant governor shall become governor for the remainder of the term. If there be no lieutenant governor the president pro tempore of the senate, the speaker of the house, the secretary of state, the state auditor, the state treasurer or the attorney general in succession shall become governor. *On the* failure to qualify, *absence from the state or other disability of the governor, the powers, duties and emoluments of the governor shall devolve upon the lieutenant governor for the remainder of the term or until the disability is removed.* If there be no lieutenant governor, or for any of said causes the lieutenant governor is incapable of acting, the president pro tempore of the senate, the speaker of the house, the secretary of state, the state auditor, the state treasurer, and the attorney general in succession shall act as governor until the disability is removed. (Emphasis added.)

Some jurisdictions with constitutional provisions essentially the same as that emphasized above have interpreted their provisions to mean that the power of Governor devolves on the Lieutenant Governor whenever the Governor crosses the state line, but settles again on the Governor when he reenters the state. E.g., *Bratsenis v. Rice,* 183 Conn. 7, 438 A.2d 789 (1981); *Petition of Commission on the Governorship of California v. Brown,* 26 Cal.3d 110, 160 Cal.Rptr. 760, 764–65, 603 P.2d 1357, 1362 (1979); *Montgomery v. Cleveland,* 134 Miss. 132, 98 So. 111 (1923); *Ex parte Hawkins,* 10 Okl.Cr. 396, 136 P. 991, 993 (1913). This has been described as the "physical absence" rule. Other jurisdictions, however, have adopted the "effective absence" principle, holding that the power of Governor devolves upon the Lieutenant Governor in the Governor's absence only when such absence effectively debilitates or prevents the Governor from executing the duties of his office. E.g., *Sawyer v. First Judicial District Court,* 82 Nev. 53, 410 P.2d 748 (1966); *In re an Act Concerning Alcoholic Beverages,* 130 N.J.L. 123, 31

A.2d 837 (1943); *Johnson v. Johnson*, 141 Neb. 239, 3 N.W.2d 414 (1942).

This "effective absence" approach was utilized by the Court in *State ex rel. Crittenden v. Walker*, 78 Mo. 139 (1883), where the sole question was whether the State Auditor could be compelled by writ of mandamus to draw a warrant for the salary of the Governor when the Governor was absent from the state. Answering this question in the affirmative, the Court stated that "the absence of the governor from the state, for the purpose of performing a duty cast upon him by law, did not authorize the lieutenant-governor to assume the functions of his office during such absence and receive his salary." *Id.* at p. 144. Again, the pertinent language of the Missouri Constitution Article IV, Section 11(a), provides that: "On failure to qualify, *absence from the state or other disability* of the governor, the powers, duties and emoluments of the governor shall devolve upon the governor for the remainder of the term or until the *disability* is removed." The seminal question is whether the Governor's temporary absence from the state is a disability of the sort contemplated by the Constitution which effectively debilitates or prevents him from performing the duties of his office.

■ In reaffirming this Court's prior application of the "effective absence" interpretation, we note the following language from *Johnson v. Johnson*, 141 Neb. 239, 3 N.W.2d 414, 415 (1942):

Absence from the state is a permanent disability if the governor abandons the office and becomes a nonresident, but mere temporary absence from the state for the performance of official duty or for recreation or for business of a personal nature not interfering with the interests of the public does not vacate the office of governor and instate the lieutenant governor therein with all the powers, duties and emoluments thereof. "Absence from the state," to entitle the lieutenant governor to the emoluments of the office of governor, is an absence amounting to a permanent disability or to a temporary disability creating a vacancy or to a disability which prevents the governor from holding the office. A governor does not lose his office by stepping over the boundary line of the state for a purpose or for a time that does not disqualify him from holding the office. During such an interval the lieutenant governor does not become governor. The Constitution does not provide for two governors at the same time.

Indeed, our Constitution provides that "[t]he supreme executive power shall be vested in a governor." Mo. Const. art. IV, § 1. As stated by the court in *Sawyer v. First Judicial District Court*, 82 Nev. 53, 410 P.2d 748, 750 (1966), "the crux of a provision for succession in the event of 'absence' is the state's immediate need for a specific act or function." In this instance, the Governor's execution of the various appointments, proclamations, etc., by his facsimile signature pursuant to instructions communicated by "fax" and by telephone was valid and was to be given full effect by the Secretary, as the Governor's temporary absence was not such as to *disable* him from performing the duties of his office. Further, the parties debate whether the Governor's absence from the state for the period of February 12 to February 26, 1990, was "for the purpose of performing a duty cast upon him by law," but we hold this distinction immaterial and determine the "effective absence" rule applies regardless of the purpose for the Governor's temporary absence.

■ Messrs. Blunt, Carnahan, Mathewson and Griffin also rely on what they perceive as a historical trend for the Governor to transfer power to the Lieutenant Governor upon leaving the state, but we find neither consistency nor compelling precedent in the historical practice. While some Governors have been fastidious in notifying Lieutenant Governors of their anticipated absences from the state and several Lieutenant Governors have on occasion temporarily acted as Governor, in each instance the Lieutenant Governor acted only with the assumption that the Governor had authorized, acquiesced in and ratified his actions. In the case *sub judice*, the Governor specifically instructed Lieutenant Gov-

ernor Carnahan *not* to take any action as Governor during his absence. Although an interpretation of Mo. Const. Article IV, Section 11(a), by the officials charged with its administration is given consideration, *Foremost Dairies, Inc. v. Thomason,* 384 S.W.2d 651, 659–60 (Mo. banc 1955), we examine to determine whether such interpretation has been clearly set forth by rule, regulation or executive order and that such interpretative policy has been consistently followed. Further, any custom or practice contrary to law is ineffective and cannot be said to constitute binding precedent. *State ex inf. Ashcroft v. Riley,* 590 S.W.2d 903, 907 (Mo. banc 1979); *Duncan v. Missouri Board for Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524, 536 (Mo.App.1988). Finally, because the words "absence from the state" have been retained in the same context in every version of the Missouri Constitution since *Crittenden,* it is presumed they retain the original meaning ascribed by the Court. *Rathjen v. Reorganized School District R–II of Shelby County,* 365 Mo. 518, 284 S.W.2d 516, 519–20 (banc 1955).

In sum, we affirm the judgment of the trial court in the declaratory judgment action as follows:

1. The powers, duties and emoluments of the Governor's office do not devolve upon the Lieutenant Governor or other designated successors under Art. IV, § 11(a), Mo. Const.1945, as amended 1968, based upon mere physical absence of the Governor from the state;[3]

2. All official actions performed by the Governor, whether within or outside the state, are valid acts of the Governor pursuant to Art. IV, § 1, Mo. Const.1945;

3. The Lieutenant Governor is entitled to be paid compensation at the salary level of the Governor based only upon the Lieutenant Governor's serving as acting Governor, § 26.010, RSMo 1986, and not based upon the Governor's presence or absence from the state;

4. Plaintiff Carnahan's April 21, 1990, filing of documents as acting Governor were invalid acts and of no effect because he was not at that time acting Governor, and therefore Secretary of State Blunt was correct in refusing to attest, authenticate and register those documents;

5. Governor John Ashcroft's February 26, 1990, filing with the Secretary of State of documents executed by him as Governor while out of state was valid and authorized and, therefore, Secretary of State Blunt's refusal to attest, authenticate and register these documents was improper;

6. Governor Ashcroft's physical absence from the state on May 10, 1990, while plaintiff Carnahan served as President of the Senate, had no legal effect upon legislation signed by Carnahan as President of the Senate on that date;

7. Secretary of State Blunt is hereby ordered to accept, attest, authenticate and register the 17 documents filed by Governor Ashcroft on February 26, 1990.[4]

The alternative writ of mandamus is made absolute. The judgment in the declaratory judgment action is affirmed as modified. Each party is to bear its own costs.

ROBERTSON, C.J., RENDLEN, COVINGTON and HOLSTEIN, JJ., CARL R. GAERTNER, Special Judge, and HIGGINS, Senior Judge, concur.

BLACKMAR, J., concurs in result in separate opinion filed.

BLACKMAR, Judge, concurring in result.

The circuit court recognized that this case involves only limited issues by the

---

**3.** We note that the declaratory judgment action also seeks a determination whether the Lieutenant Governor ceases to be able to act as President of the Senate while serving as acting Governor, and whether the President Pro Tempore of the Senate is authorized to exercise the powers of President of the Senate at any time while the Lieutenant Governor is serving as acting Governor, but in light of our holding, a pronouncement on these issues would be dictum and in the nature of an advisory opinion.

**4.** However, it would appear that the proclamation designating March 4 through 10, 1990, as "Save Your Vision Week," is now moot.

following statement in the dispositive document:

> The sole question necessary to resolve this matter is whether John D. Ashcroft had the authority as Governor to sign, or have signed by facsimile signature, the 17 documents here in question while he was physically in Washington, D.C. ...

Having answered that question, the circuit court should have expressed no legal conclusions on unrelated issues, even though the parties may have, expressly or implicitly, invited it to do so. To expound further, by answering hypothetical questions, is to disregard the teachings of decades. The ultimate discretion in declaratory judgment actions is ours. *See Nicolai v. City of St. Louis,* 762 S.W.2d 423 (Mo. banc 1988). This is especially so in the present case, in which the initial filing was in this Court. Dicta, furthermore, are not controlling in future cases. *State ex rel. Anderson v. Hostetter,* 346 Mo. 249, 140 S.W.2d 21, 22 (banc 1940); *State ex rel. Wolfskill v. Shain,* 178 S.W.2d 446, 447 (Mo.1944).

There is another reason why the Court should not venture into uncharted waters involving hypothetical situations. In 1968 the Missouri Constitution was amended to provide a "disability board" with authority to determine when the governor is "unable to discharge the powers and duties of his office." Mo. Const.1945, Art. IV, § 11(b). None of the parties discussed the effect of this section in the briefs. The Attorney General, in response to a question during oral argument, suggested that the section was intended to apply only to physical or mental disability, but further reflection might produce a difference in thinking on the point. It seems to me that the section should be considered in any case in which it is suggested that the governor is under disability. We should withhold unnecessary speculation until we have an appropriate case.

The principal opinion also declaims unnecessarily on the effect of historical evidence of the relationship between various governors and lieutenant governors. I would agree that plain constitutional language cannot be abrogated or modified by practice, but prevailing practice is a recognized aid to construction when constitutional language is reenacted without substantial modification. *See Rathjen v. Reorganized School District R–II of Shelby County,* 365 Mo. 518, 284 S.W.2d 516 (Mo. banc 1955); *Moore v. Brown,* 350 Mo. 256, 165 S.W.2d 657 (Mo. banc 1942). I see no need to particularize because the case at hand does not require particularization. I am concerned lest some of the general language of the principal opinion cause future confusion.

Inasmuch as I agree with the trial court's resolution of the "sole question," I concur in making the alternative writ peremptory and in affirming the judgment.