IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-CA-01088-SCT

*ALICE SCOTT, MAYOR OF THE CITY OF CANTON,*
*MISSISSIPPI AND GAIL SHAW-PIERSON*

*v.*

*STANLEY F. STATER, III*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/95 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | EDWARD BLACKMON |
| ATTORNEY FOR APPELLEE: | L. ABRAHAM ROWE, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/2/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. This case involves a dispute between the Mayor and the Board of Aldermen of the City of Canton, Mississippi and the limitations of the powers of both the mayor and the board of aldermen.

¶2. Stanley F. Stater, III, was appointed municipal judge for the City of Canton for a partial term beginning in January of 1995. On September 19, 1995, at a meeting of the mayor and board of aldermen, Stater was appointed for the remainder of the term. The board of aldermen were divided with five voting in favor of appointment and two voting against. The next day, Mayor Scott filed her "Veto and Veto Message" and vetoed the board's action in regard to the appointment of Stater. On September 22, 1995, Mayor Scott delivered to Mr. Stater a letter notifying him that he was suspended from the office of city judge.

¶3. On September 25, 1995, a written notice of a Special Meeting of the Mayor and Board was circulated among and signed by the aldermen, mayor, city clerk, chief of police and city attorneys calling for a meeting on September 26, 1995, and announcing that the purpose therefore was to

"override Mayor's veto of the appointment of Stanley F. Stater, III, as the City of Canton Municipal Court Judge, as well as his suspension from that office."

¶4. On September 26, 1995, at 4:00 o'clock p.m., the time set in the notice, five of the aldermen appeared at City Hall to attend the called Special Meeting. Mayor Scott was present at City Hall but did not attend the meeting.

¶5. Although the aldermen, clerk, and city attorney had gathered in the meeting room and were ready to proceed with the only item on the agenda, the mayor did not enter the room. Mayor Scott was then personally reminded that the time had come for the meeting. However, she remained outside of the meeting room in the clerk's office approximately twenty feet away and would not enter.[1]

¶6. The board members present then called the meeting to order by their unanimous consent. A motion was made to adopt a resolution overriding the mayor's veto of the appointment of Mr. Stater as Municipal Judge and to authorize Mr. Stater to serve in that capacity without interference from the mayor until further order of the mayor and board. The motion was properly seconded and approved unanimously by the five (5) members present.

¶7. During the controversy described above, the mayor, acting without advice or consent of the board "appointed" Gail Shaw-Pierson as Municipal Judge Pro Tempore for the City of Canton.

¶8. Scott's complaint about Stater is that he served as Municipal Judge and Chairman of the Republican Party of Madison County at the same time, and that in his dual roles he endorsed candidates, raised funds on behalf of candidates for political office, made speeches on behalf of political candidates, and generally ran the county Republican Party organization. Scott contends that this conduct violates the Code of Judicial Conduct, specifically Canon 7 of the Code of Judicial Conduct, which reads in pertinent part:

> **A. Political Conduct in General.**
>
> (1) A judge or a candidate for election to judicial office should not:
>
> (a) act as a leader or hold any office in a political organization;
>
> (b) make speeches for a political organization or candidate or publicly endorse a candidate for public office;
>
> (c) solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions, except as authorized in subsection A(2).

Code of Judicial Conduct Canon 7. "Compliance with the Code of Judicial Conduct" sets out an exception to compliance with certain canons in particular circumstances. The relevant part reads:

> Anyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a referee in bankruptcy, special master, court commissioner, or magistrate, is a judge for the purpose of this Code. All judges should comply with this Code except as provided below.

**A. Part-Time Judge.** A part-time judge is a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge.

A part-time judge:

(1) is not required to comply with Canon 5C(2), D,E, F, and G, and Canon 6C.

Code of Judicial Conduct, Compliance with the Code of Judicial Conduct (A)(1). Scott maintains that even though Stater is a part-time judge, Canon 7 pertaining to political party participation is applicable. Since Stater has continued to chair a political organization, Scott maintains that Stater violated the Code of Judicial Conduct. Because Stater violated the Code, Scott, as chief administrative officer of the City of Canton, and in order to preserve the propriety of Canton's municipal court, suspended Stater and appointed Gail Shaw-Pierson as the Municipal Judge Pro Tempore. The suspension and appointment were singular acts of the mayor without approval by the board of aldermen.

¶9. Scott bases the authority of her actions on two Attorney General Opinions which state that the mayor may suspend city employees with pay. *See* Attorney General letters to: **Sarah W. Grantham**, 1989 WL 451638 (Miss. A.G. Oct. 27, 1989); **John H. McWilliams**, 1991 WL 533533 (Miss. A.G. July 25, 1991). Scott contends that the mayor has a duty to actively and vigilantly enforce all laws and ordinances for the municipality government. Miss. Code Ann. § 21-15-9 (1990). Since Scott claims that Stater has violated the Code of Judicial Conduct, Scott maintains that as mayor she has an obligation to prevent city employees from violating the law. Scott bases her authority to suspend Stater on Miss. Code Ann. § 21-3-15(1) (1990), which states in part that the mayor "shall have the superintending control of all officers and affairs of the municipality, and shall take care that the laws and ordinances are executed." Miss. Code Ann. § 21-3-15(1) (1990).

¶10. Scott's argument fails to consider all relevant Attorney General Opinions. While Attorney General Opinions have stated that the mayor has the authority to suspend city employees with pay, only the board of aldermen has authority to suspend city employees without pay. Attorney General Opinion to **John H. McWilliams**, 1991 WL 533533 (Miss. A.G. July 25, 1991). Furthermore, "[I]t is the opinion of this office that in a code charter municipality it is the board of aldermen that is the appointing authority and has the responsibility of hiring and firing subject to the Mayor's veto." Attorney General Opinion to **Mayor Eugene Wakham**, 1987 WL 121405 (Miss. A.G. Feb. 9, 1987) . *See also* Miss. Code Ann. §§ 21-3-3, 21-3-5, and 21-3-15 (1990). Scott could suspend Stater, but with pay. Only the board of aldermen could suspend Stater without pay or discharge him.

¶11. Canton is a code charter municipality. A code charter designates authority to the board of aldermen to appoint officers of the municipality while the mayor votes when the board is equally split. *See* Miss. Code Ann. §§ 21-3-3 and 21-3-15 (1990). The mayor can affirm or veto the appointment. Miss. Code Ann. § 21-3-15(2) (1990).

¶12. Neither the mayor nor the board of aldermen may remove a municipal judge once on the bench on their own authority where the municipal judge has violated the Code of Judicial Conduct. This rule provides a safeguard protecting the court system from the usurpation of political power and influence. Article 6, § 177A of the Mississippi Constitution provides for a Commission on Judicial

Performance which recommends to the Mississippi Supreme Court what action should be taken against a judge who has violated the terms of his office. Miss. Const. of 1890, art. VI, § 177A. *See also* **In re Anderson**, 412 So.2d 743, 744 (Miss. 1982). Thus, while a mayor may have an obligation to file a formal complaint with the Judicial Performance Commission, the mayor does not have the authority to suspend a properly appointed judge from serving on the bench.

¶13. Stater's complaint in the nature of a Petition for a Writ of Quo Warranto in the Circuit Court of Madison County resulted in that court issuing a temporary restraining order, finding that Stater was the rightfully appointed municipal judge of the City of Canton. For the reasons set out below we affirm the order of the Circuit Court of Madison County.

¶14. There is no question that initially Stater was lawfully appointed. Without doubt Mayor Scott had authority to veto the appointment. The City of Canton operates as provided in Miss. Code Ann. § 21-3-1 et seq (1990). In Canton, the governing authorities consist of a mayor and seven aldermen. Under § 21-3-15, the duties of the mayor are defined as follows:

> (1) The mayor shall preside at all meetings of the board of aldermen, and in case there shall be an equal division, he shall give the deciding vote. He shall have the superintending control of all the officers and affairs of the municipality, and shall take care that the laws and ordinances are executed.

> (2) Ordinances adopted by the board of aldermen shall be submitted to the mayor. The mayor shall, within ten (10) days after receiving any ordinance, either approve the ordinance by affixing his signature thereto, or return it to the board of aldermen by delivering it to the municipal clerk together with a written statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the board of aldermen prior to the next meeting of the board, but no later than fifteen (15) days after it has been presented to him, or unless the board of aldermen, upon reconsideration thereof on or after the third day following its return by the mayor, shall, by a vote of two-thirds ( 2/3 ) of the members of the board, resolve to override the mayor's veto.

> (3) The term "ordinance" as used in this section shall be deemed to include ordinances, resolutions and orders.

Miss. Code Ann. § 21-3-15 (1990). The mayor only votes when the aldermen are equally split. Here the aldermen voted five to two to appoint Stater as municipal judge. Under § 21-3-15(2), the mayor can veto the aldermen's ordinances. Here Mayor Scott exercised her veto power as provided by statute. The aldermen may override a mayor's veto by a two-thirds majority vote. In a municipality consisting of seven aldermen, at least five votes are needed to override the mayor's veto.

¶15. The issue is whether the aldermen of Canton had a proper two-thirds majority vote to override Mayor Scott's veto.[2] At the properly called meeting to override the veto, five aldermen attended and voted to override the veto by a five to zero vote. The mayor and two aldermen were not present. Under Miss. Code Ann. § 21-3-13 (1990), the board of aldermen elect from among themselves a mayor pro tempore who serves as mayor when the mayor is temporarily absent or disabled. Mayor Scott argues that since she, as mayor, did not preside over the meeting, the mayor pro tempore's vote

was improper since the mayor pro tempore may only vote as the mayor can, when the aldermen's vote is split equally. Under Mayor Scott's theory of law, the board had only a four to zero vote which was insufficient to override her veto.

¶16. The circuit court held that the aldermen vote of five to zero, which included the mayor tempore's vote, was valid and overrode the mayor's veto. The circuit court found that Mayor Scott's argument failed for two reasons:

> First, the meeting of the Board on this particular matter was clearly a legislative function of the board taken in response to the executive veto. The presence of the mayor at this meeting for the mere purpose of "calling it to order" would have been a meaningless gesture on her part.

> However, even if we assume *arguendo* that the Mayor should have been "present" to have a valid meeting, in truth and in fact she *was* present. Miss. Code Ann. § 21-3-13 allows a board member to serve as mayor tempore in cases of "temporary absence or disability of the mayor." In the instant case, the mayor was neither absent or [sic] disabled. She was in the City Hall building, on the same floor, in an adjacent room approximately twenty (20) feet away. She could have easily entered the meeting room and assumed her duties if she desired to do so.

The court concluded that the actions of the five board members were properly considered and effective in overriding Mayor Scott's veto. We agree.

¶17. This case turns on the meaning of the phrase "temporary absence" found in Miss. Code Ann. § 21-3-13 (1990). This Court has not previously addressed the meaning of the phrase "temporary absence." Other jurisdictions have addressed this concept in the framework of the constitutional duties of the governor and lieutenant governor. *See State ex. rel. Ashcroft v. Blunt*, 813 S.W.2d 849, 852-53 (Mo. 1991). Two interpretations of the phrase have been advanced: 1) the "physical absence" rule, and 2) the "effective absence" principle. *Id*. Under the "physical absence" rule, the transfer of duties is triggered when the official leaves the state. *Id*. at 852. The "effective absence" principle turns on whether the official's physical absence prevents her from performing the duties of the office. *Id*. at 852-53.

¶18. Here, Scott's refusal to enter the room where the aldermen were meeting does not satisfy the requirements of either test. Scott was not physically absent from the jurisdiction, being only twenty feet from the meeting room. Neither was she absent from the jurisdiction in a way which prevented her from performing her duties as mayor. Whatever "temporary absence" does mean, it clearly does not embrace the behavior in this case. The board of aldermen, therefore, were not required to elect from among themselves a mayor pro tempore who would be constrained from participating in the vote to override the veto. To require such would give the mayor unbridled power to skew the vote simply by refusing to attend the meeting.

¶19. We decline to grant the motion filed by Stater to dismiss the appeal pursuant to Miss. R. App. P. 2(a)(2)(i). Scott certainly had standing to prosecute the appeal both as an individual and as Mayor of Canton. After all, the important issue on appeal is the determination of the authority of both the mayor and the board of aldermen in a code charter municipality. The mayor had no authority to suspend Stater without pay and certainly under the Code Charter had no authority to appoint Gail-Shaw Pierson as Judge Pro Tempore. If the mayor believes that the judge violated the Code of

Judicial Conduct, the mayor's course of action is to file charges with the Mississippi Judicial Performance Commission.

¶20. The judgment of the Circuit Court of Madison County, Mississippi is affirmed.

¶21. **AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, McRAE, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.**

**BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶22. I concur with the majority opinion and all that is said save that portion of the opinion which preserves the attempt to override the mayor's veto.

¶23. Our statute providing that the mayor pro tem serves as the mayor in the mayor's absence has been interpreted in a long series of opinions from our attorney general to mean that in the mayor's absence the acting mayor who presides in the mayor's stead does not count for a quorum and cannot vote except in instances where the mayor could have voted, that is, where the votes are evenly divided. *See, e. g.*, A. G. Opinion, Docket No. 81-1105 (1981); A. G. Opinion, Docket No. 82-946 (1982). While these opinions clearly do not have the force of law, they are responsive to the statute which they interpret and have guided municipal operations over the years.

¶24. The statute does not prescribe conditions for the mayor's absence. Miss. Code Ann. § 21-3-13 (1990). The statute has been read and I so read it to mean absence from the meeting, for whatever reasons, including political reasons. Refusal to participate in order to deny a quorum or otherwise is a time-tested, if not honored, political tool. The problems that the use of such tools can cause in the operation of local government, should be resolved politically.

¶25. In the meeting in question someone had to preside. That person was acting mayor and could not vote. There were then insufficient remaining votes to override the mayor's veto. I would reverse the judgment of the circuit court.

1. Mayor Scott testified that she stayed in the clerk's office in order to be available to assist citizens with the payment of traffic fines and tax redemptions and other services because the office was short-handed.

2. Stater contends that the mayor lacks the authority to veto the aldermen's appointment of a municipal judge. Stater cites *Rich v. McLaurin*, 83 Miss. 95, 35 So. 337 (1903), for the premise that the mayor may not veto the appointment of a police justice. However, *Rich* essentially was overruled

when the Mississippi Legislature amended Miss. Code Ann. § 21-3-15. *See Edwards v. Weeks*, 633 So.2d 1035 (Miss. 1994). In *Edwards*, this Court determined that the Legislature amended "measure" as found in 21-3-15 in *Rich* to "ordinances" with a broadened definition found in a new subsection 3. *Edwards*, 633 So.2d at 1036-37. This Court concluded that the amended language gave the mayor authority to veto the board of aldermen's appointment of the city attorney.