## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1999-CA-00829-SCT

### CONSOLIDATED WITH

### NO. 1999-CA-00830-SCT

### AND

### NO. 1999-CA-00831-SCT

*CITY OF MADISON, MISSISSIPPI*

*v.*

*WILLIAM J. SHANKS AND DONNA Y. SHANKS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/1997 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN HEDGLIN |
| ATTORNEY FOR APPELLEES: | PHILLIP M. NELSON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED - 7/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE PRATHER, C.J., MILLS AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. The Board of Aldermen of the City of Madison voted to rezone three parcels of land owned by William J. and Donna Y. Shanks. The Mayor then filed a Statement of Objections, effectively vetoing the Board's decision. The Shankses appealed to the Madison County Circuit Court which reversed the Mayor's decision, finding that the Mayor had acted arbitrarily and capriciously in vetoing the Board's actions. On appeal, the City of Madison contends (1) the Mayor's veto is not an "action" of the governing authorities from which the Shankses may appeal, (2) alternatively, if the Mayor's veto constitutes an appealable "action," the Shanks did not effectuate a timely appeal, (3) the Shankses failed to satisfy the minimum evidentiary requirements to justify approval of a rezoning decision, and (4) the circuit court erred in substituting its judgment for the governing authorities of the City in making a legislative determination regarding zoning issues based solely on evidence outside the record. We find that the Mayor did not act arbitrarily in vetoing the Board's decision to rezone the parcels of land. Accordingly, we reverse the judgment of the circuit court.

### FACTS

¶2. Though there is no evidence of it in the record, both parties maintain that on January 16, 1992, the City of Madison adopted a new comprehensive zoning ordinance and zoning plan. At that time, William and Donna Shanks owned three parcels of land located in the City of Madison: Parcel One, consisting of .792 acres fronting 126.42 feet along the west side of U.S. Highway 51 and lying east of the Illinois Central Railroad track and north of Hoy Road; Parcel Two, comprising 4.22 acres lying west of U.S. Highway 51, fronting the east side of the railroad track and lying north of Hoy Road; and Parcel Three, made up of .611 acres fronting the west side of U.S. Highway 51and lying east of the railroad track and north of Hoy Road. At the time of the adoption of the new comprehensive zoning plan, the three parcels at issue were zoned A-1 for agricultural use.

¶3. On May 12, 1994, the Shankses filed rezoning applications with the City of Madison, seeking to rezone Parcel One from A-1, Agricultural, to I-1, limited Industrial, and to rezone Parcels Two and Three from A-1 to C-2, general Commercial. Following a public hearing, the Madison Planning and Zoning Commission recommended that all three applications be approved.

¶4. On June 21, 1994, the Mayor and Board of Aldermen conducted their monthly meeting at which the Board approved the Shankses' three rezoning applications. On June 27, 1994, Madison Mayor Mary Hawkins filed a Statement of Objections, effectively "vetoing" the Board's decision. Mayor Hawkins maintained that the Board had erred in approving the re-zoning applications, as the Shankses made no showing that (1) there was a mistake in the original zoning, or (2) the character of the neighborhood had changed to such an extent as to justify rezoning and that a public need existed for rezoning.

¶5. The Board of Aldermen met on July 5, 1994, and acknowledged the Mayor's veto. Bill Shanks appeared at the meeting and agreed to reserve his comments for the next Board meeting. At the Board's August 2, 1994, meeting, the Statement of Objections was placed on the "consent agenda" which was unanimously approved. When asked by the Mayor if he wished to make a motion to override her veto of the Shankses' rezoning applications, Alderman Dunn indicated that he did not.[1]

¶6. On August 12, 1994, the Shankses filed a Bill of Exceptions in the Madison County Circuit Court. The circuit court reversed the Mayor's veto, finding that the Mayor had acted arbitrarily and capriciously. It is this judgment from which the City of Madison appeals.

## STANDARD OF REVIEW

¶7. It is well-settled law that before a zoning board may reclassify property from one zone to another there must be proof that either (1) there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification, and there was a public need for rezoning. *Fondren North Renaissance v. Mayor*, 749 So. 2d 974 (¶ 6) (Miss. 1999). The burden of proof to support the rezoning is upon the applicant, and both propositions must be proven by clear and convincing evidence. *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280 (Miss. 1992).

¶8. The zoning decision of a local governing body which appears to be "fairly debatable" will not be disturbed on appeal, and will be set aside only if it clearly appears the decision is arbitrary, capricious, discriminatory, illegal, or is not supported by substantial evidence. *Id.* at 1280. "'Fairly debatable' is the antithesis of arbitrary and capricious. If a decision is one which could be considered 'fairly debatable,' then it could not be considered arbitrary or capricious, although we continue to use both standards." *Saunders v.*

*City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987).

## DISCUSSION

### I. WHETHER THE MAYOR'S VETO IS AN "ACTION" OF THE GOVERNING AUTHORITIES FROM WHICH THE SHANKSES MAY APPEAL

¶9. The City of Madison contends that the Mayor's veto of the Board's decision is not an action which may be appealed. It argues that the Mayor's veto "voids" any action taken by the Board and thus, there is no action from which to appeal. The City claims, "A Mayor's veto of a Board action does not result in an action by a municipality; instead, the veto nullifies the action of the Board. Once the Mayor has exercised her veto, the matter stands as if no action whatsoever had been taken. Therefore, there is nothing for the Shankses to appeal."

¶10. Miss. Code Ann. § 11-51-75 (1972) describes the manner in which appeals are taken from judgments or decisions of the board of supervisors or municipal authorities of a city, town, or village:

> Any person aggrieved by a judgment or decision of the board of supervisors, *or municipal authorities* of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. . . .

(emphasis added). The issue in the present case is whether the mayor is a "municipal authority" whose actions may be appealed under Miss. Code Ann. §11-51-75 (1972). Both the statute and relevant case law suggest that this question should be answered affirmatively.

¶11. The source of the mayor's veto power is Miss. Code Ann. § 21-3-15 (1990) which provides:

> Ordinances adopted by the board of aldermen shall be submitted to the mayor. The mayor shall, within ten (10) days after receiving any ordinance, either approve the ordinance by affixing his signature thereto, or return it to the board of aldermen by delivering it to the municipal clerk together with a written statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the board of aldermen prior to the next meeting of the board, but no later than fifteen (15) days after it has been presented to him, or unless the board of aldermen, upon reconsideration thereof on or after the third day following its return by the mayor, shall, by a vote of two-thirds (2/3) of the members of the board, resolve to override the mayor's veto.

Miss. Code Ann. § 21-3-15 (1990).

¶12. A mayor's power to approve or veto actions of a municipal legislative body is legislative in nature. McQuillin, Municipal Corporations § 16.42 (3rd ed. 1989). As one court has explained, "[t]he mayor's veto, like the veto of the President or a state governor, is undeniably a part of the legislative process. It differs only in that it takes place on the local level. When the mayor exercises his veto power, it constitutes the policy-making decision of an individual elected official. *It is as much an exercise of legislative decision-making as is the vote of Congress, a state legislator, or a city councilman.*"***Bryant v. Nichols***, 712 F. Supp. 887, 891 (M.D. Ala. 1989) (emphasis added).

¶13. There exists no Mississippi case law on point which explicitly holds that a mayor's veto is an appealable action of a municipal authority as contemplated by § 11-51-75(1972).[(2)] However, there is case law which suggests that a mayoral veto is subject to judicial review. In **Robinson v. Utilities Comm'n**, 487 So. 2d 827, 829 (Miss. 1986), this Court held that the Utilities Commission of the City of Columbus was not a municipal authority within the meaning of Miss. Code Ann. § 11-51-75 (1972). An employee of the Utilities Commission of the City of Columbus brought suit in the Lowndes County Justice Court arguing that he was entitled to three weeks of vacation rather than two. **Id.** at 827. The justice court dismissed the suit without prejudice and the employee appealed to the Circuit Court of Lowndes County which entered an order dismissing the cause. **Id.** at 828. The circuit court found that because the Utilities Commission was a municipal authority as contemplated by Miss. Code Ann. § 11-51-75 (1972), the employee was required to appeal the justice court's decision within ten days. **Id.** This Court reversed, explaining that "[i]n sections under Title 21, Miss. Code Ann. (1972), the references to 'municipal authority' mean the mayor and board of aldermen, city council, or other such form of government." **Id.** at 829. Accordingly, because the Utilities Commission was not a municipal authority, the failure to appeal within ten days did not warrant dismissal. **Id.** at 830.

¶14. Though the City argues that there is no final order from which the Shankses may appeal, "[t]his Court has said that any act is appealable. It does not have to be an order or formal judgment." **_Benedict v. City of Hattiesburg_**, 693 So. 2d 377, 380 (Miss. 1997). "Mississippi cases have referred to 'actions' of counties and municipalities as appealable events." **South Cent. Turf, Inc. v. City of Jackson**, 526 So. 2d 558, 561 (Miss. 1988).

¶15. This Court has identified the following as municipal authorities within the meaning of § 11-51-75: "the mayor and board of aldermen, city council, or other such form of government." **Robinson**, 487 So. 2d at 829. Because the mayor is a municipal authority, it follows that her actions are subject to review. Moreover, this Court has given a broad interpretation to §11-51-75 (1972), writing, "[w]e are of the opinion that any act of a county or municipality leaving a party aggrieved is appealable under § 11-51-75 where . . . all issues of the controversy are finally disposed of by Order of the City Council." **_Garrard v. City of Ocean Springs_**, 672 So. 2d 736, 738 (Miss. 1996). A finding that the mayoral veto is subject to review is consistent with both **Robinson** and the liberal construction consistently afforded the statute.

## II. WHETHER THE SHANKSES EFFECTUATED A TIMELY APPEAL FROM THE MAYOR'S ACTION

¶16. Alternatively, the City contends that if the Mayor's veto is indeed appealable, then the Shankses are not entitled to judicial review because they did not effectuate a timely appeal. The City maintains that the Mayor's veto became final on June 27, 1994, the date it was delivered to the city clerk. The City notes that the Shankses did not file their notice of appeal and bill of exceptions until August 12, far in excess of the ten-day period allowed under the statute.

¶17. The Shankses, however, argue that the veto did not become final until August 2, 1994, the date the Board proceeded to "ratify the Veto of the Mayor as aforesaid by adopting the 'consent agenda' whereon the matter of the Mayor's Veto and Statement of Objections to the prior action of the Board with respect to said Rezoning was placed prior to said regular meeting of the Board." They argue that because the Board retains the power to override the veto, the veto is not final until the Board either accepts the veto, which it did in this case, or votes to override it. According to the Shanks, their appeal was timely, as the Board

voted to accept the veto on August 2.

¶18. The statute provides that a party must appeal "within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision . . . ." Miss. Code Ann. § 11-51-75 (1972).[(3)] In the instant case, the mayor's veto does not fit neatly within the language of the statute, as it did not come at a "session" of the municipal authorities. However, we find that the veto became final following the Board's August 2, 1994 "session" at which it accepted the veto and refused to override it.

¶19. "The statute's ten (10) day time limit in which to appeal the decision of a Board is both mandatory and jurisdictional. . . . Where an appeal is not perfected within the statutory time constraints no jurisdiction is conferred on the appellate court; and the untimely action should be dismissed." *Newell v. Jones County*, 731 So. 2d 580, 582 (Miss. 1999). There is no case law addressing the point in time at which a mayoral veto becomes final for purposes of appeal. However, there are a number of cases which discuss the statutory ten day period in which a party may appeal actions taken by municipal authorities in other contexts.

¶20. In *Sanford v. Board of Supervisors*, 421 So. 2d 488, 489 (Miss. 1982), fifty-two people filed a petition with the Covington County Board of Supervisors seeking to have a road constructed connecting the property of one of the petitioners with an existing public road. The Board entered an order appointing a committee to "lay out and mark said road and report their proceedings in writing to the Board at its next meeting . . . ." *Id.* A landowner across whose land the proposed road would be built appealed to the circuit court which recognized "a crucial feature of the case in stating that he questioned 'whether the order appointing the Committee would be a final order' subject to an appeal." *Id.* On appeal to this Court, we held that the appeal was premature, as "[t]here can be no valid appeal until there has been a judgment disposing of the case. . . . A final judgment has been defined by this Court as a judgment adjudicating the merits of the controversy which settles all the issues as to all the parties." *Id.*

¶21. Similarly, in *Garrard v. City of Ocean Springs*, 672 So. 2d at 737, the Mayor and Board voted on February 20, 1990, to turn over the American Legion Hut to the Parks Commission. The minutes of the meeting were approved at a City Council meeting on March 6, 1990. *Id.* Several individuals filed a bill of exceptions against the City of Ocean Springs on October 22, 1991. *Id.* The Jackson County Circuit Court dismissed, though the grounds for its decision were unclear. *Id.* at 738. In holding that the Board's action became final when it approved the motion to transfer the property to the Parks Commission, this Court explained that "[w]e are of the opinion that any act of a county or municipality leaving a party aggrieved is appealable under § 11-51-75 where . . . all issues of the controversy are finally disposed of by Order of the City Council." (quoting *South Cent. Turf, Inc.*, 526 So. 2d at 561.

¶22. These decisions focus on the finality of a municipal authority's action. In the instant case, the Mayor's veto became "final" when the Board declined to override it at its August 2, 1994 meeting. Until then, the veto was subject to override. At the Board's August 2 meeting, the Mayor's Statement of Objections was placed on the consent agenda which was voted on and accepted unanimously by the Board. The following appears in the minutes of the meeting:

> At this time, Mayor Hawkins addressed Alderman Dunn for discussion regarding the veto of Mr. Williams Shanks' rezoning applications, #94008, #94009, and #94010. Alderman Dunn stated that he felt the City is inconsistent on rezoning applications and that he did not want to set an unhealthy

precedent. Mr. Shanks attended the meeting and presented photos of properties surrounding the land involved in these rezoning applications. Mayor Hawkins asked Alderman Dunn if he would like to make a motion to override her veto of these rezoning applications. He stated that he would not.

¶23. Other cases discussing when the ten day period within which to appeal an action of a municipal authority begins to run include *City of Oxford v. Inman*, 405 So. 2d 111, 114 (Miss. 1981) ("the filing of the bill of exceptions on June 13, 1980 was timely because the rezoning ordinance did not become effective until written, signed, and formally adopted on June 3, 1980. . . ."); *South Cent. Turf, Inc.*, 526 So. 2d at 563 ("the City of Jackson was without authority to reconsider the matter which it had already finally decided on April 8, 1986, when the Mayor signed the minutes of the April 1 meeting thereby giving effect to the Council's decision to award the contract to E-Z-Go."); *J.H. Parker Constr. Co. v. Board of Aldermen*, 721 So. 2d 671, 674 (Miss. Ct. App. 1998) ("[t]he ten day period did not commence until April 11 when the City executed the contract with Lampkin Construction.").

¶24. The mayor's veto became final for purposes of perfecting an appeal under Miss. Code Ann. § 11-51-75 (1972) on August 2, 1994 when it was accepted by the Board. Consequently, the Shankses timely effectuated an appeal on August 12. This assignment of error is without merit.

### III. WHETHER THE SHANKSES SATISFIED THE MINIMUM EVIDENTIARY REQUIREMENTS TO JUSTIFY APPROVAL OF A REZONING DECISION

¶25. The City contends that the circuit court erred in reversing the decision of the Mayor. It argues that the Mayor correctly vetoed the Board's action, as there was no evidence that either (1) there was a mistake in the original zoning or (2) the character of the neighborhood had changed to such an extent as to justify rezoning and that a public need existed for rezoning. We agree.

¶26. In her Statement of Objections, Mayor Hawkins found that there was no evidence that the character of the neighborhood had changed to such an extent as to justify the rezoning and that a public need for the rezoning existed. She explained:

> First, the person seeking the change must demonstrate a change in the character of the surrounding neighborhood or an error in the assignment of the existing zoning classification. Clearly, the first criterion is not met. The present zoning map of the City of Madison took effect on January 16, 1992. There has been no change whatsoever in the character of the neighborhood since the present zoning map was adopted, and there is no suggestion in the record that original error was the basis of the application for rezoning. In fact, the petitioner recently constructed a barn on the subject property which demonstrates that the present agricultural classification is correct.

> Therefore, the application for rezoning is defective because even the first criterion for rezoning has not been met.

> Moreover, the second criterion for rezoning is that a public need must be demonstrated. There is an abundance of property between Highway 51 and the Illinois Central right-of-way which is already zoned I-1 and much of that property is still undeveloped. It is apparent that the City of Madison has not only sufficient property zoned I-1 in that area, but an excess.

In determining whether the Mayor acted arbitrarily and capriciously in vetoing the Board's action, this Court must necessarily consider the evidence presented to the Board in support of the rezoning applications.

Accordingly, we must determine whether the record supports rezoning of the property in question on the basis of a substantial change in the character of the neighborhood and a public need for rezoning.

¶27. The following appears in the minutes of the meeting at which the Board voted to approve the Shankses' rezoning applications:

> On behalf of Mr. Bill Shanks, Building Inspector Vic Gray-Lewis requested approval of rezoning applications #94008, #94009, and #94010. He stated that the Planning and Zoning Commission had approved them. Mr Shanks entered the meeting and expressed his intent to build mini warehouses at this location. He stated that the warehouses would not be seen from Highway 51 and would be located on the back portion of the property beyond the railroad tracks. He also stated that surrounding residents had been polled and that no objections had been raised. Mayor Hawkins indicated that she had sent a letter to Mr. Murray Fincher of the Planning and Zoning Commission requesting a delay in action of these applications until Mr. Wayne Timmer and the Central Mississippi Planning and Development District have reviewed them. Building Inspector Vic Gray-Lewis also sent a letter to the Planning and Zoning Commission to this effect . . . .

The Board then voted to approve each of the three applications for rezoning. There is no evidence of anything else which the Board may have considered in rendering its decision. Accordingly, we find that the Mayor correctly vetoed the Board's approval of the Shanks' rezoning applications, as there is no evidence that the character of the neighborhood changed to such an extent as to justify the rezoning and that a public need for the rezoning existed.

¶28. In *Board of Aldermen v. Conerly*, 509 So. 2d 877, 884 (Miss. 1987), this Court explained that:

> When we have before us an appeal from an action by a governing board rezoning property, unless the record contains specific finding by such board that one or both of these two criteria have been met, and in addition thereto sufficient evidence to support such finding, we will inevitably conclude that the governing board acted arbitrarily, unreasonably and capriciously.

This Court later relaxed the rule somewhat, explaining that "while recognizing the desirability of specific findings by the zoning authority on each considered issue, we will not reverse for a lack of such specificity where a factual basis for the action is disclosed." *Faircloth v. Lyles*, 592 So. 2d 941, 945 (Miss. 1991). We find no basis for the Board's actions in the instant case.

¶29. The Shankses maintain that there was sufficient evidence before the Board to justify the rezoning. They note that the Board "not only heard and considered public comment as it is required to do, it had at its disposal for consideration in its deliberations the official zoning ordinance and the official zoning map showing the existing zoning classifications for the area of the Shanks property and the changes in zoning classifications noted on the official map." The Shankses further allege that the Board had before it the comprehensive future land use map "and other relevant information and/or documents pertaining to zoning matters which were available to them at every meeting." Finally, the Shankses assert that the Board members utilized their personal knowledge concerning the changed circumstances within the community.

¶30. The record of the proceedings before the Board does not support the Shankses' contentions. Though the evidence described above may have been considered by the Board in approving the applications for rezoning, the record does not reflect such consideration. This Court has recognized that "informality attends

rezoning proceedings, and governing board members may take into consideration their personal knowledge and familiarity with their community . . . this by no means suggests that, in order to justify rezoning, a board need not find the necessary criteria for rezoning by clear and convincing evidence and that it is not necessary that such evidence appear in the record." *Conerly*, 509 So. 2d at 885.

¶31. In the applications for rezoning, the Shankses gave as their reason for requesting the rezoning their desire to "comply with [the] land use plan." This Court found that compliance with the land use plan evidenced a public need for rezoning in *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991). The Court held that "the record and, in particular, the future land use plans adopted by the city of Biloxi in 1970 and 1979 targeting Block 1 for commercial use and development, provide a substantial basis for the conclusion reached by both the city council and the circuit judge that there exists an identifiable public need for rezoning." *Id.*

¶32. Though there may be some evidence of a public need for the rezoning in the instant case, there is no evidence in the record of a change in the character of the neighborhood. The Board acted arbitrarily and capriciously in granting the Shankses' rezoning applications. It follows that the Mayor did *not* act in a similar manner in vetoing the Board's actions.

### IV. WHETHER THE CIRCUIT COURT ERRED IN SUBSTITUTING ITS JUDGMENT FOR THE GOVERNING AUTHORITIES OF THE CITY IN MAKING A LEGISLATIVE DETERMINATION REGARDING ZONING ISSUES, BASED SOLELY ON EVIDENCE OUTSIDE THE RECORD

¶33. The City maintains that because the circuit court considered evidence outside the record on appeal, it merely substituted its judgment for that of the governing authorities. As discussed above, the circuit court erred in setting aside the Mayor's veto because of the lack of support in the record for the Board's decision. Therefore, this Court does not address this issue.

### CONCLUSION

¶34. For these reasons, the judgment of the Madison County Circuit Court is reversed.

¶35. **REVERSED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, MILLS AND WALLER, JJ., CONCUR. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

1. This same sequences of events occurred in 1993 when the Shanks petitioned for rezoning of these same three parcels. The rezoning applications were approved by the Board and vetoed by the Mayor.

2. This Court has, however, issued opinions discussing the scope of the mayoral veto power. *Scott v. Stater*, 707 So. 2d 182, 185 (Miss. 1997) (city mayor had authority to veto appointment of municipal judge, subject to override by two-thirds vote of the board of aldermen); *Edwards v. Weeks*, 633 So. 2d 1035, 1037 (Miss. 1994) (mayor of town operating under code charter had authority to veto order of town's board of aldermen appointing town attorney); *Rich v. McLauren*, 83 Miss. 95, 101, 35 So. 337 (1903) (mayor had no power to veto election of police justice by board of aldermen), superseded by statute as stated in *Scott v. Stater*, 707 So. 2d 182,186 (Miss. 1997).

3. Though this Court has not yet considered the issue, an opinion issued by the Attorney General states that a mayoral veto must be overridden no later than the next lawfully convened regular or special meeting of the Board. Miss. Att'y Gen. Op. No. 94-0809 (Feb. 15, 1995).